and we'll move to the third and final case of the day, 18-14397, Spencer v. Benison. I see that we have Mr. Kidd here for Spencer, Mr. Cockrell here for Benison. Nope, sorry, did I get that reversed? No, you aren't. Ms. Kidd is here for Benison. Ms. Kidd, sorry about that. It happens all the time. Alright, counsel for appellant, you may proceed. Thank you. May it please the court, my name is Jamie Kidd and I represent Green County Sheriff Jonathan Benison in this argument. The district court's erroneous denial of qualified immunity to Sheriff Benison in this case is predicated on his incorrect application of the discretionary function test. This fundamental error then caused the district court's subsequent analysis of Spencer's legal claims to be flawed because, of course, it wasn't conducted through the lens of clearly established law. Now, to be clear, Sheriff Benison has consistently argued and still maintains that Spencer can't establish that any of his constitutional rights were violated and that summary judgment is inappropriate in this case in its entirety. At the very least, the district court's denial of qualified immunity to Sheriff Benison in his individual capacity is due to be reversed. Ms. Kidd, this is Judge Newsom, can I ask you a quick question? So, the district court's order to my reading is a little odd in the following respect. It addresses discretionary authority and it says that this was not an exercise of discretionary authority and so thus no qualified immunity. Then it goes on to address the constitutional claims on the merits, but then declines to address the question whether there was clearly established law. If we agree with you that the district court erred in its framing of the discretionary authority analysis, could we just stop and remand it? Yes, Your Honor, you certainly could stop and remand it. There is also precedent, Jordan v. Doe, 38 S. 3rd, 1559, there is precedent that allows this court to reverse the denial of qualified immunity based on a determination that he wasn't acting within the scope of his discretionary authority. And then go further and actually rule that Sheriff Benison is entitled to qualified immunity. So, I guess the answer to your question is this court can do whatever it wants in terms of remanding versus going on and answering the substantive question. Okay. So, of course, the first- I have a similar, somewhat kind of a threshold question. Typically, when we delve into these questions of discretionary authority, which frankly is not often in the qualified immunity analysis, we have to do a pretty deep dive into state law. Just because state law controls what the functions of that person's, legitimate functions of that official's jobs are. Here, I read through the briefs before the district court and frankly didn't see a citation to much Alabama law. Now in appeals, you cite ex parte fielding for the proposition that the sheriff and his deputies were charged with the responsibility to preserve, I believe it is to preserve peace and public order is the way that it's put in that case. How do we deal with that? The fact that you've cited something now, citing Alabama law, but there wasn't any Alabama law cited in your brief before the district court. How do we deal with that? Well, first, of course, your honor, merely citing, you can cite additional authority on before the appellate court. It's merely in support of an issue. I think one of the issues here is that the discretionary function immunity here does not really arise from necessarily the same kind of deep dive into Alabama law. So that differentiates this case from, for example, a case that was just released in where the court had looked at, had found that there wasn't a discretionary immunity because the police officer there wasn't acting within the scope of his authority because he was outside of his territorial jurisdiction. The issue here is not so much Alabama law, the legal issue here is that the district court and Spencer conducted the wrong analysis because they went to the substance of what Sheriff Innocent was alleged to have been done instead of looking at his general duties. I don't really think... Ms. Kidd, this is Judge Newsom. You take Judge Baker's point, I think. I understand your argument to be that the district court's analysis of discretionary authority, the discretionary authority issue is too granular, too far down into the weeds. And what the district court really should have been doing is asking, as we've said, whether the conduct was of a type that fell within the employee's job responsibilities. I take your point. But Judge Baker, I guess, is asking you, without reference to Alabama law, how do we know whether this was of a type that fell within the employee's job responsibilities? Can we just take judicial notice of the sort of the fact that police officers exist to preserve peace and public order, or do we need something more concrete in Alabama law to verify that? Well, Your Honor, I think certainly you could take judicial notice, and that's also been established. And again, I would say that this is a matter of citation of authority more than raising the argument, because we certainly argued before the district court that the burden was clearly met, and actually did discuss now in a footnote, this footnote 11 of our summary judgment brief, we discussed that some Alabama law, because there was a claim, I mean, the reason that Spencer called 911 was he alleged to trespass, and we did discuss that, you know, under Alabama law, you could only arrest a person for a misdemeanor, so he should trespass if it was committed in his presence, that sort of thing. So I would say that the specific authority issue is not one of we didn't raise the issue, it's that we've cited additional authority that this court certainly couldn't take, if you want to frame it as judicial notice of, or, you know, just go under the rule of its additional authority, either way, that that issue has been properly preserved and raised. But you did cite two United States Supreme Court cases, and the district judge grappled with those, but those cases don't involve Alabama law. So if we're against you, and we find that you should have raised those before the district judge, would it be fair to give the district judge a shot at the law you now cite, or should we do that as a matter of first impression here? Well, Your Honor, we would argue that it would be more appropriate to do it as an issue of first impression, because this really is, I mean, the scope of his authority, this really is a question of law, it's a question of well-established law, too. I mean, there's not really an issue about what a sheriff's duties are, and that a sheriff can, you know, as in this case, respond to 9-1-1 with ex parte fielding and another Alabama law that defines his duties. So that would be our position on it. Okay, thank you. Let me ask you a question related to this line of inquiry on the discretionary authority point. Your client will say that, you know, this was a law and order issue, blocking traffic, we had traffic blocked up, I needed him to move the cones and the bulldozer and everything of that nature. Mr. Spencer will say, no, this was all the cones and everything was on my private property. Here's what I just want to clarify. At the heart of this is a boundary dispute between Mr. Spencer and the casino. When Mr. Spencer says, no, no, no, these items, the cones, the bulldozers, everything, that was on my private property, were those items on what everybody thinks is his private property, or were those items on the boundary disputed property? Your Honor, to the best of our knowledge, those items were on the boundary disputed property, and I think it's important to note that regardless of what happens in this appeal, right, I mean, the sheriff could be totally out of it, and this case would still end up going to trial between Mr. Spencer and the other plaintiffs and the group of defendants that we've sort of collectively called the Bellamere, the casino defendants, on the trespass claims. I mean, that's still a live issue that neither party filed summary judgment on in the district court. So the minute warning, counsel. So, Ms. Kidd, if I can just follow up briefly, because I want to make sure I've got this locked down. So your point, am I understanding correctly, your point is that the bulldozers and the cones were on the boundary disputed property, but from your client's perspective, sort of forget about the boundary dispute for a moment, forget about the scope of the easement for the moment, they were on, they were impeding the road that the casino had built, and that was what gave rise to the public safety risk? That was what gave rise to the public safety risk. The other issue, and this is something that is said very specifically in the recording and reflected in the record, is that the reason the sheriff was there was because Spencer called 9-1-1. He called 9-1-1 four times over this, including this was the third call in about a month, and so to quote the sheriff, he was sick of it, 9-1-1 was sick of it, everybody else was sick of it. So his main goal in going out there that day was to, and he did, he got Mr. Cockrell himself on the phone, who had assured him, of course, didn't end up happening, but had assured him that they were going to go to civil dispute, and then, so that was his main point, and then in the interim, let's clear the road, not only up to the casino, but also because cars were stacking up down on the state highway, and that point that cars were stacking up on the state highway is undisputed. And that argument has expired. Okay, Ms. Kidd, you've reserved four minutes for rebuttal. Mr. Cockrell, 15 minutes. Please report, this is Bob Cockrell speaking for the appellate league. Your Honor, first I need to say that Mr. Spencer didn't call them to, about boundary line dispute, he called them to enforce a federal court bankruptcy order that we had litigated for five years over this easement, and the federal judge had established this easement, and Mr. Spencer got out there and showed the sheriff, measured it off with a rule tape, and showed him exactly where the easement was. He got, the reason this is an issue was because Greene County is a little different. I mean, the sheriff controls bingo in Greene County. He regulates bingo in Greene County, he passes out the money in Greene County to the charities, to the hospital, it's a great benefit to him individually. And so, naturally he was on the side of bingo before he ever got there. Two deputies had been there beforehand, and two deputies had determined it was department policy that they didn't get involved in civil matters. And if you look at Alabama code, which they did not cite the law, Alabama code 36223, it tells you what the sheriff's authorities are, what a he has, what discretionary authority he has. And you won't find in there that he can take private property from a citizen and order him off his own land, order him to move cones, order him to move his vehicles, but if you also- So Mr. Cockrell, let me ask you a quick question. This is Judge Newsom. Do you dispute, setting aside for the moment whether the case itself was cited to the district court, do you dispute the Alabama Supreme Court's holding and fielding that the sheriff is charged with the authority and duty to preserve peace and public order? No, sir, I do not. But- And is that so, and then do you dispute as a matter of fact that that is a fair description of what he was doing here? No, sir, not at all. Because the fact is he did not block the whole roadway. He only blocked the portion that was on Mr. Spencer's property. And as the district court pointed out, you know, they could easily run over the cones if it had been an emergency vehicle or something like that. And never did they keep people from going in or out of the bingo hall, but they did keep them off their own property. Now, we've litigated this thing for five years. The federal district- Counsel, what about the fact that we've got a backup on the highway related to this argument? We dispute that. You dispute that there were any cars backed up on the highway? Yes, ma'am. I mean, not hardly any. This is Greene County. It is not New York City. There's very little traffic down there. And that would be an exaggeration at best, that it was backed up in the highway, blocking the highway or something. And we dispute that. And we dispute that it was any kind of emergency or public safety issue, because emergency vehicles could get in and get out that anybody could, for that matter. But these people destroyed their own easement. That's why the sheriff was called so many times. Frankly, if the sheriff had just stopped when he heard about the bankruptcy order, which he had a copy, because I made sure he had a copy after the federal bankruptcy court ruled. And then when he was told about it again, that he established the easement there by Mr. Spencer, he should have backed up, stopped, and said it's not our policy to be involved in a civil matter. So, Mr. Cockrell, this is Judge Newsom. I mean, I thought that the recording basically captures the sheriff saying, look, this is a private dispute. The courts are involved. I think maybe you had told him that you were going to the circuit court to get it squared away. I mean, it seems to me that this was just sort of a stopgap measure. He's not trying to permanently take your property. He's just trying to ease the tension, provide sort of a short-term solution pending your resolution of this issue in state court. What happened to that state court litigation, by the way? Can I respond to you first? Sure, please. First of all is that what Mr. Spencer did was told was he's going to arrest him and stay off the property. And he took that as word. Now, at that point, I've been in Greene County on this case three times in lawsuits after the federal judge ruled that were dismissed in state court. After I had to go down there, and you wouldn't believe how hard it is to get a hearing set on a bingo case in Greene County. So I'm having to do all that. And then I felt like the sheriff was definitely on their side and that there's no question it was not a public emergency concern. And I believe that there was no reason to try to get an injunction because he had already violated his constitutional rights. Because he had a right to peaceful enjoyment of his quiet enjoyment of his property. And he hadn't had that since they've been down there. And the sheriff assisted them by letting them complete their rules by ordering Mr. Spencer to move his cones and move his tractor on his own property. Now, that is a constitutional law violation, because that's a protectable right. And that's what happened in this case. And so, even by file for injunction, the constitutional protectable right had already been breached by the sheriff. And that's what happened. And that's where the case went. And frankly, I've been litigating with these people for five years. I was hoping to just go away. But it came to a head when the sheriff came up there, ordered him off his own property, ordered him to move his cones when there was not a public emergency issue. And we disputed it. And that's a jury question. And that's what that's our position. Well, this is Judge Baker. Isn't it a bit of a stretch to argue on the issue of causation here that somehow the sheriff caused the further paving of the road when he only directed a stopgap measure to address the issue that your client called him out there to address? Well, Your Honor, they couldn't complete the road if he left the cones up and his vehicles there that were blocking their path to complete this road that was destroying their own easement and coming on his property. So, I mean, the sheriff stopped him and kept him coming back on his property in order to remove the only thing that was keeping them at the time from continuing to pay trespass on his property, you know, assisted them. But the sheriff stopped it at that moment, the sheriff did not prevent your client from pursuing this civil case in court. He allowed them to have the time to finish up that roadway. And you got to understand, my client had called the sheriff at least three times before that. They could just come out and say, this is a civil matter. We're not going to be involved in it because that's Department of Policy, by the way. And the sheriff, when he came, he's made the comment, those are my customers in that bingo hall. You know, my customers. So, I'm sorry, this is Judge Newsom, but to Judge Branch's point, I mean, I don't want to oversimplify, but if the bankruptcy order is as clear as you say, wouldn't it have been a simple thing for you to just go to the circuit court, present the bankruptcy court's order, you know, request enforcement of it, recognition of it, and enforcement of it. And if it's denied because you say, you know, sort of the courts in Greene County aren't going to cooperate, then you appeal that up the chain in the state system. It's already been appealed. It's already been judicially established. And the order... I'm sorry, what has? What's been established? The easement was judicially established in the bankruptcy order. Correct. So, but it sounds like what you need is a state court order enforcing that bankruptcy judgment to sort of quiet title to this easement or whatever. I may not be using the property terminology quite correct, but, you know, you need a state court judgment establishing that you win. If I got to do it, Judge, I've got a federal court order that says what it is. There's a clear violation of it, a clear trespass. The sheriff knew it because he was told and shown it, and he still got involved. And he still affected my client's enjoyment of his property and quiet enjoyment by ordering him to remove his vehicles, his cars off his own property. And that's basic constitutional law about the right to peaceful enjoyment of your property. And when I decided to file a lawsuit, I decided this needed to stop once and for all. And that's what I was trying to do because we were not getting any help in Greene County. At the beginning of your argument, you stated that what the sheriff came out here to do was to enforce a court order. And as the district court stated under Alabama Code Section 3622.3, the sheriff is charged with the responsibility to enforce court orders. Now, maybe he did it wrong. Maybe he didn't understand the property line. Maybe he should have done one thing or the other. But don't we take it to state at a general swipe that he was out there trying to enforce a court order? That's what your client called him out there to do. And even as the district court acknowledges, that's within his responsibilities. He did not do that. In fact, he ignored and went contrary to the court order. He shouldn't have ordered Beverly Spencer off his own property. He shouldn't have done that. He shouldn't have ordered him to move the cones. He shouldn't have ordered him to move the equipment. He should have allowed him to peacefully enjoy his property and sell it in state court. But he didn't do that. If he had ordered him to move those cones and move his own property off his own property, we wouldn't file this lawsuit, period. We probably would be in the injunction. But when he did that, knowing there's a court order out there, he should have inquired. I'll take the position he knew about it. He knew about the easement because everybody knows everything in county. So you said if he hadn't ordered Mr. Spencer off his own property, you wouldn't have filed this lawsuit. You would have pursued the state court litigation. What about the sheriff's action prevented you from pursuing the state court litigation? Well, I just figured I could do it all in one time. And that's what I've done. Okay. And I feel like it's basic constitutional law that you have to write a peaceful and quiet position to your property. The sheriff knew this. He knew this. The district court judge knew this when he ruled. Everybody knows this. I've been in law enforcement. A law enforcement officer can't take people's property. He can't take people's property without due process. You can't do it. And you call it temporary, you call it whatever you want, but he did it. It was significant. It was not dominious because we litigated that for years. Counsel, the sheriff will say in response that the bankruptcy court order did not give him enough information to be able to enforce it. I'd like to respond to that in saying this. A third grader took a rule from his order and measured off from that center the three-phase power line that they built their road on as an easement after the judge ruled and installed a utility zone after the judge ruled and used for over a year that the sheriff saw every day in Greene County. And he knew what the easement was. He knew what it was and he did it anyway. He took his property, he ordered him off his own property, ordered him to move his combs, ordered him to move his vehicles off his own property. He knew all this. A third grader took a rule and followed the bankruptcy judge's order and measured it off just like Mr. Spencer did in his presence and showed him where the easement was. The sheriff threw his hands up and said, y'all settle this in court and left. But instead, he allowed them to, by making Mr. Spencer move all this property, his vehicles and his combs, he allowed them to continue to build that road which was practically through by the time they got there. Would you concede if indeed it was true, if you did not dispute that there was a if there was in fact a highway backup, and he said move the combs, move the vehicles, there's a highway backup, it's a public safety issue? I would not concede it because they had enough of their easement to go to and fro. And they had enough of their easement that was not blocked to go to and fro. So if they were stopped, it's probably looking at the blue lights or whatever, but it was not because they were blocked. And that's the jury question, you know, a lot of it. But it's just, this is basic constitutional law, about the peaceful possession and quiet possession of your own real estate. And that's, that's all I have. Counsel, if we get, if we're not with you on the discretion and authority question, okay, just assume, I know you don't want to, but assume for me that we're not. Not saying one way or the other, but just assume that. Then we, would you agree that this court needs to deal with the clearly established law prong of the Qualified Immunity Analysis, or do we need to send it back to the district court to deal with the Qualified, the clearly established law prong of the Qualified Immunity Analysis, because the district court did not address that? I would say that the district court would need to be the one to address that. Because it's factual. In fact, the whole appeal is based on the factual, not purely the law. I'm not even sure they have a right to appeal if you look at it. And, you know, that's what I think. All right, Mr. Cockrell, thank you so much. Ms. Kidd, you've got four minutes remaining in rebuttal. Thank you, Your Honor, for the record, for Amy Kidd again. A couple of discrete points. First of all, Mr. Cockrell just said now that they dispute that the cars were backed up. This is from Beverly Spencer's deposition, which is document 45-2, page 67 of the deposition, page 17 of that record. He was asked, Mr. Gomez, another witness in the case, testified there were cars backed up on Highway 11. Do you remember that? Answer. Every day. Question. When he was out there. Answer. Right today there is. So, yeah, there is no dispute. There's a lot of other testimonies. I just wanted to highlight that his own client on deposition clearly testified that the cars were backing up on Highway 11. There was another issue about it that said, well, they threatened to arrest him. What the sheriff said, because the recording states that some of the people around Mr. Spencer were getting rather, we'll say, boisterous and using some inappropriate language. What the sheriff said was, if you come at me, physically, right, if you come at me, I'll arrest you. He never said anything about if you don't move the cones. That's just, that's just nonsense. And nobody got arrested. You know, the whole, what's maddening, frankly, about this is that they're saying now, well, the sheriff should have stayed out of it. Well, and we've been told that it was the sheriff's policy to stay out of it. You had been told that. So why did you keep calling 9-1-1, right? At that point, what the sheriff was looking at was a repeated misuse of emergency services when he had been told, you know, before, stop doing this. This isn't us. Stop calling us. So the sheriff went out there that day. Now, I don't know, you know, why or what or who or whatever changed Mr. Cockrell's mind about there being no reason to try to get an injunction. But the fact of the matter is, is that on that day, when the sheriff left, he was told by Mr. Cockrell that they were going to get the injunction that day. You know, honestly, we don't know and we don't, despite the feelings of counsel or whatever, we don't care. I don't want to agree. I don't care about the boundary dispute and the substance of the boundary dispute. The fact is, though, that if it were so clear, one would have thought, frankly, that they would have filed a summary judgment on that point in the district court. And they didn't. The boundary dispute, you know, I'm not sure of all the litigation that's gone on, but the boundary dispute is still alive before the district court even. So if it were that clear, then why wouldn't you have done that? You know, he said, I think he said specifically the sheriff should have inquired about it. Well, he did inquire about it. He inquired about it from Mr. Cockrell. He got him on the phone and was told that this would all be fixed and that 9-1-1 wouldn't have kept being called, you know. But the larger point, really, our larger legal point, all of that, all of the substance of were the cars backing up, you know, was, what were the sheriff's motives, what, whose side was he on, none of that's really appropriate at this stage, at the discretionary function. Once you look at the discretionary function analysis or whether the actions are of a type that fell within the employee's job responsibilities. And here, you're looking at that the sheriff responded to a 9-1-1 call and took action to try to preserve the peace and stop this cycle. And those are clearly actions of a type that fell within the employee's, within his job responsibilities under Alabama law. So... Counselor, your azimuth has expired. All right. Thank you. Okay, Ms. Kidd, Mr. Cockrell, thank you both very much. That case is submitted and the court will be in recess until 9 a.m. tomorrow morning.  Thank you, everyone. Thank you. Thank you.